UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
In re:                                                                  Chapter 11

                                                               Case No.: 1-18-43045-ess

MOLDOVA FOREVER, INC.
D/B/A BOON BY MOLDOVA RESTAURANT

                                            Debtor.
---------------------------------------------------------------X

**AFFIRMATION IN OPPOSITION TO DEBTOR'S MOTION ENFORCING THE AUTOMATIC STAY AND SEEKING DAMAGES FOR VIOLATION OF THE EXISTING AUTOMATIC STAY**

      40-01 WY Corp. ("WY Corp."), by and through their attorneys, Law Offices of Gus Michael Farinella, P.C., hereby responds to Moldova Forever, Inc.'s ("the Debtor") Motion Enforcing the Automatic Stay and Seeking Damages for Violation of the Existing Automatic Stay as follows:

## FACTS

1. Debtor entered into possession of premises pursuant to a written agreement with WY Corp on or about April 30, 2016.

2. On October 2, 2017, WY Corp. commenced Non-Payment summary proceedings against Debtor in the Civil Court, County of Queens Landlord Tenant Part.

3. The Non-Payment Petition stated that Debtor failed to pay the rent and additional rent beginning as follows:

    Base Rent:
    | | |
    |---|---|
    | May 2017 | $9,600.00 |
    | June 2017 | $9,600.00 |
    | July 2017 | $9,600.00 |
    | August 2017 | $9,600.00 |

    Additional Rent:
    | | |
    |---|---|
    | Deposit pursuant to Paragraph 71 of the Rider to Lease | $40,000.00 |
    | Balance of security deposit pursuant to Paragraph 64 of Rider to Lease | $14,142.00 |
    | Twenty (20%) percent of the Real Estate Taxes for May 2017 | $440.00 |
    | Twenty (20%) percent of the Real Estate Taxes for June 2017 | $1,745.00 |

| | |
|---|---|
| Twenty (20%) percent of the Real Estate Taxes for July 2017 | $1,819.00 |
| Twenty (20%) percent of the Real Estate Taxes for August 2017 | $1,819.00 |
| | |
| Water charges for October 26, 2016 through January 19, 2017 | $2,368.80 |
| Water charges for January 16, 2017 through April 7, 2017 | $1,480.50 |
| | |
| Late charges for May 2017 | $480 |
| Late charges for June 2017 | $480 |
| Late Charges for July 2017 | $480 |
| Late Charges for August 2017 | $480 |
| | |
| Architect fee for violation correction | $6,000 |
| Plumber fee for boiler violation correction | $2,200 |

4. Debtor requested an extension of time to answer conditioned upon the payment of $20,000.00 towards the sums owed. Debtor tendered a check to WY Corp. in the sum of $20,000 on October 27, 2017, <u>which bounced</u>.

5. Debtor filed a late Answer dated November 20, 2017 and WY Corp made a Motion to Strike the late answer on November 21, 2018.

6. On the return date of the Motion to Strike the Debtor's answer to the Non-Payment proceeding, the Debtor and WY Corp entered into a stipulation agreement to adjourn the matter to December 14, 2017.

7. On December 14, 2017 the Debtor and WY Corp. entered into a Stipulation agreeing upon the following:

   (i) Debtor consented to the immediate issuance of a Judgment of Possession and a Warrant of Possession but that the execution of the Warrant shall be stated upon the terms therein;
   (ii) Debtor as to immediately pay the sum of $12,500.00
   (iii) The amount after the payment of $12,500 due to WY Corp. was $122,406.00 representing rent and additional rent through December 2017;
   (iv) Debtor was to remain current on its rent and additional monthly rent and pay the sum of $31,876.00 on or before January 1, 2018;
   (v) Debtor was then to pay the sum of $7,544.17 each month in addition to rent and additional rent towards the arrears;
   (vi) In the event of default under the Stipulation, Warrant may be executed after three (3) days' Notice to Cure.

8. **The Warrant of Eviction was issued by the Clerk of the Court of January 2, 2018**, and was stayed pending compliance with the Stipulation.

9. Debtor first defaulted on the Stipulation in January 2018 by failing to pay the sum of $7,544.17 due under same. Debtor also failed to make the payments under the stipulation

for February and March 2018. WY Corp. then served a Notice to Cure to the Debtor's Attorney as per the Stipulation.

10. After the service of the Notice to Cure, the Debtor and WY Corp. entered in a Stipulation on April 11, 2018, whereby Debtor acknowledged it owed a balance of $11,149.00 towards the current rent and additional rent for February 2018; the sum of $11,419.00 towards the current and additional rent for March 2018; the sum of $11,419.00 towards the current rent and additional rent for April 2018. The Debtor further acknowledged that it owed the sum of $30,176.00 as of April 11, 2018 in payment towards the arrears of $122,406.00 under the Stipulation dated December 14, 2017. Said stipulation also stated that any payment made by Debtor would be applied first towards current rent prior to being applied towards the arrears set forth in the Stipulation dated December 14, 2017.

11. Said Stipulation required Debtor to pay to WY Corp. the sum of $23,000 prior to April 30, 2018 or the execution of the Warrant of Eviction would proceed as scheduled on May 2, 2018. However, Debtor only paid $17,000 to be applied towards the current rent due.

12. Another agreement between WY Corp. and Debtor was reached on May 1, 2018 wherein the Debtor paid the sum of $11,000 towards the current rent owed to stay the eviction until May 8, 2018.

13. Debtor against defaulted on the Stipulation and failed to pay the sums due and owing under the Stipulation dated December 14, 2017.

14. WY Corp. extended the execution of the warrant of eviction again until May 22, 2018 upon the payment of $8,000 towards the current rent to allow Debtor to pay the sums due and owing under the Stipulation dated December 14, 2017.

15. The execution of the Warrant of Eviction was scheduled for May 23, 2018. Debtor showed up at WY Corp.'s landlord tenant Attorney's office with $7,000.00 in bank checks towards the outstanding amount owed pursuant to the stipulation and WY Corp.'s attorneys advised Debtor's attorney that WY Corp. would not consent to a **fifth** adjournment of the execution of the Warrant of Eviction.

16. On May 22, 2018, the Debtor's filed an Order to Show Cause in the Civil Court of Queens County to stay the execution of the Warrant of Eviction. The Order to Show Cause was signed on May 22, 2018. The Order to Show Cause also stayed the execution of the warrant of eviction pending a hearing on the Order to Show Cause. A hearing on the Order to Show Cause is scheduled for June 18, 2018.

17. On May 28, 2018, the attorney for the WY Corp. in the Landlord Tenant matter filed an opposition to the Debtor's Order to Show Cause which explained history of the case above and requested that the Court deny the Order to Show Cause to stay the execution of the Warrant of Eviction.

### THIS COURT SHOULD DENY DEBTOR'S MOTION SEEKING DAMAGES FOR VIOLATION OF THE AUTOMATIC STAY

18. The attorneys for the WY Corp are not bankruptcy practioners, but rather landlord tenant attorneys who were simply opposing an Order to Show Cause filed in state court that sought to stay the execution of the Warrant of Eviction based on the argument that the Debtor was willing to make a partial payment to WY Corp for back rent and not on the basis of a bankruptcy filing or the stay imposed by said filing.

19. The Order to Show Cause to Stay the Warrant of Eviction the attorneys for WY Corp. opposed was filed on May 22, 2018. Said Order to Show Cause did not mention the Chapter 11 filing as the Chapter 11 was filed on May 25, 2018, nor did the Order to Show Cause seek to stay the execution of the warrant of eviction based on the bankruptcy filing. The Order to Show Cause that the landlord tenant attorneys for WY Corp were opposing simply sought to stay the execution of the Warrant of Eviction based on the claim that the Debtor had $7,000 to pay towards the back rent of over $65,000.

20. WY Corp. did not take any affirmative acts to evict the Debtor. They merely filed an opposition to an Order to Show Cause that the Debtor filed in state court. Thus, WY Corp. did not willfully violate the automatic stay.

21. In the event that this Court finds a willful violation of the automatic stay, there were no actual damages resulting from any willful violation of the automatic stay. The Order to Show Cause signed in the landlord tenant court stayed the execution of the Warrant of Eviction. The Debtor's Chapter 11 filing was duplicative as a stay of the execution of the Warrant of Eviction was already in effect as a result of the Order to Show Cause being signed by the state court judge.

22. Simply put, the Debtor is in the exact same position they'd have been in had there not been any opposition to the Order to Show Cause filed by WY Corp's attorneys in state court. Both the Order to Show Cause and the Chapter 11 stayed the execution of the warrant of eviction. The Debtor was not evicted, nor were there any affirmative actions taken by WY Corp to evict the Debtor, nor where there any Court proceedings to attempt to evict the debt or execute upon the warrant of eviction after the WY Corp.'s attorneys filed a defensive response to the Debtor's Order to Show Cause. WY Corp.'s attorneys simply filed an opposition to the Debtor's Order to Show Cause as they were required to, and the status quo has been the same ever since. There were no affirmative actions taken by WY Corp to evict the Debtor. There has been no change in circumstance as a result of the Opposition to the Order to Show Cause and as such no actual damages have been suffered by the Debtor.

### THE AUTOMATIC STAY MUST BE LIFTED IN ORDER FOR THE DEBTOR TO BE ABLE TO ASSUME THE LEASE AND THE CHAPTER 11 CASE BE FEASIBLE

23. A further reason that there were no actual damages suffered by the Debtor is because this matter will have to be returned to state court in order to deal with the issue of the Warrant

of Eviction, which is what the Order to Show Cause that WY Corp's landlord tenant attorneys opposed dealt with.

24. A Warrant of Eviction was issued by the Queens County Clerk against the Debtor on January 2, 2018.

25. New York State law is clear that the issuance of the warrant of eviction terminated the landlord-tenant relationship between the Debtor and WY Corp. Section 749(3) of the New York Real Property Actions & Proceedings Law provides as follows:

> The issuing of a warrant for the removal of a tenant cancels the agreement under which the person removed held the premises, and annuls the relation of landlord and tenant, but nothing contained herein shall deprive the court of the power to vacate such warrant for good cause shown prior to the execution thereof. Petitioner may recover by action any sum of money which was payable at the time when the special proceeding was commenced and the reasonable value of the use and occupation to the time when the warrant was issued, for any period of time with respect to which the agreement does not make any provision for payment of rent.

N.Y. REAL PROP. ACT. & PROC. L. § 749(3) (McKinney 2008 ("RPAPL")). See also Bell v. Alden Owners, Inc., 199 B.R. 451, 458 (S.D.N.Y.1996) ("Under New York law, the issuance of a warrant of eviction cancels the lease between the parties and annuls the relationship of landlord and tenant.").

26. The effect of this statute is clear: The Debtor's leasehold rights were terminated upon the issuance of the warrant of eviction on January 2, 2018, subject to the power of the state court to vacate the warrant for good cause prior to execution of the warrant.

27. Courts in New York have addressed similar issue such as the one presently before this Court. *See*, In Re Sweet N Sour 7ᵗʰ Ave. Corp., No. 10-12723, 431 B.R. 63 (Bankr.S.D.N.Y. 2010) and in In re Mad Lo Lo LLC, No. 09-11911, 2009 WL 2902567 (Bankr.S.D.N.Y. May 28, 2009). Both matters were decided by Judge Glenn.

28. In In re Mad Lo Lo LLC, Tirn Realty Corp. ("Tirn"), a commercial landlord of the debtor, moved the court for an order either determining that the automatic stay did not apply to the summary nonpayment proceeding pending in state court or to lift the automatic stay so it could execute a warrant of eviction against the debtor. Id. at *1. Tirn had obtained a judgment of possession and warrant of eviction against the debtor. The debtor moved to vacate the warrant of eviction by order to show cause and obtained a temporary stay of execution of the warrant pending hearing on the order to show cause. The day before the order to show cause was to be heard, the debtor filed for bankruptcy. See id.

29. Applying RPAPL § 749(3), the Mad Lo Lo Court **observed that the issuance of the warrant of eviction severed the landlord-tenant relationship between the parties**. Id.

at *2. (Emphasis Added) The court concluded, however, that the automatic stay applied to the debtor's interest in its lease, but only with regards to the debtor's possessory interest in the property. Id. (citing In re Griggsby, 404 B.R. 83, 92 (Bankr.S.D.N.Y.2009)). The Mad Lo Lo Court further noted t**hat the fact that the automatic stay applied to the debtor's possessory interest in the property did not resurrect the landlord-tenant relationship**. Id. (Emphasis Added) The debtor, however, could request the court to lift the automatic stay so that it could return to state court and attempt to have the warrant of eviction vacated and the landlord-tenant relationship reinstated, as the bankruptcy court lacks the power to reinstate the lease. See id.

30. The Mad Lo Lo reasoning applies here too. A warrant of eviction was entered on January 2, 2018. Pursuant to RPAPL § 749(3), the issuance of the warrant severed the landlord-tenant relationship between WY Corp. and the Debtor. The parties, however, agreed — and the state court so-ordered — a stay of the execution of the warrant of eviction through the Stipulation. Other courts have likewise held that where a court issues a warrant of eviction but stays its application, a possessory interest remains that may be protected by the automatic stay.

31. In In Re Sweet N Sour 7th Ave. Corp., No. 10-12723, 431 B.R. 63 (Bankr.S.D.N.Y. 2010), Judge Glenn followed the exact same reasoning as his previous decision in Mad Lo Lo. Judge Glenn found that the issuance of the Warrant of Eviction against the Debtor severed the landlord tenant relationship. Id. at 68. Given that the landlord tenant relationship was severed, Judge Glenn found that the Debtor had to return to state court in an attempt to get the Warrant of Eviction vacated before they could assume the lease with their landlord under 11 U.S.C. Section 365d(3). Judge Glenn lifted the automatic stay to allow the Debtor's to commence appropriate proceedings in the state court seeking to vacate the warrant of eviction. He also allowed the Landlord to oppose said state court proceeding.

32. As per the Mad Lo Lo and Sweet N Sour Courts, while the automatic stay may apply to protect the Debtor's equitable and possessory interests in the property, **no landlord-tenant relationship exists**.

33. As the Mad Lo Lo and In Re Sweet N Sour 7th Ave. Corp. Courts have held, given the issuance of the warrant of eviction which severed the landlord tenant relationship between WY Corp. and the Debtor, the Lease is not part of the estate and **may not be assumed pursuant to section 365(d)(3) of the Bankruptcy Code unless the Debtor first goes to state court vacate the warrant of eviction.**

34. Only if the state court first reinstates the landlord-tenant relationship by vacating the warrant of eviction may the Debtor assume the Lease under section 365(d)(3). Judge Brozman addressed this precise issue in In re W.A.S. Food Service Corp., 49 B.R. 969, 971-72 (Bankr.S.D.N.Y 1985). There, a warrant of eviction was entered against the debtor, ending landlord-tenant relationship. The landlord argued that the chapter 11 trustee could not assume the lease without having a state court vacate the warrant of eviction and reinstate the landlord-tenant relationship. Id. at 970. The debtor remained in

6

possession of the property pursuant to a stipulation providing for the payment of arrears as well as ongoing rent and the immediate issuance of a warrant of eviction. The stipulation, however, stayed the execution of the warrant of eviction if payments were timely made. Id. at 971. The court concluded that while the automatic stay protected the debtor's possessory interest in the property, "the mere potentiality of a restoration of the landlord tenant relationship through vacatur of the warrant of eviction, does not vest the debtor with a sufficient interest in the leased property to allow assumption and assignment of the lease." Id. at 972 (internal citations and footnote omitted); see also In re Issa Corp., 142 B.R. 75, 78 (Bankr.S.D.N.Y.1992) ("But the mere potentiality of restoration of the landlord tenant relationship through vacatur of the warrant of eviction does not vest the debtor with a sufficient interest in the leased property to allow assumption and assignment of the lease.").

35. The facts here are almost exactly the same as those in W.A.S. Food Service Corp, Mad Lo Lo, and Sweet N Sour. The Debtor will not be entitled to assume the lease with WY Corp. that was terminated by the issuance of a warrant of eviction. But, as in W.A.S. Food Service Corp., Mad Lo Lo, and Sweet N Sour, the possibility that the Debtor may convince a state court to vacate the warrant of eviction is not a sufficient to allow the Debtor to assume a terminated lease.

36. As shown above, Courts in similar circumstances to the one presented before this Court have lifted the automatic stay to permit the debtor to seek to vacate a warrant of eviction in state court before it could seek to assume the lease under section 365(d)(3). See, e.g., In re Mad Lo Lo LLC, 2009 WL 2902567 at *4; and In Re Sweet N Sour 7th Ave Corp, 431 B.R., at 70, 72.

37. Therefore, it is respectfully submitted that this Court follow the Courts cited above and also lift the automatic stay to permit the debtor to seek to vacate the warrant of eviction and also permit WY Corp. to oppose any effort by the Debtor to vacate the warrant of eviction in the state court.

38. Specifically, WY Corp. respectfully submits that this Court follow Judge Glenn's Order in Mad Lo Lo, wherein Judge Glenn Ordered:

> Provided that the Debtor takes all reasonable steps within ten days to restore the state court matter to the active calendar, the stay will remain in effect until the state court reaches its decision. If the warrant of eviction is vacated, the stay will remain in effect thereafter. If the state court declines to vacate the warrant, the stay shall be dissolved forthwith.

Id. at * 4.

**WHEREFORE**, it is respectfully requested that this Court deny Debtor's Motion for Damages for Violations of the Automatic Stay. Furthermore, it is respectfully requested that this court set an Order lifting the automatic stay and Ordering that the Debtor takes all reasonable steps within ten days to restore the state court matter to the active calendar and vacate the

warrant of eviction. It is further requested that this Court allow WY Corp to be able to oppose any relief the Debtor may seek in state court in response to this Court's Order. It is furthermore requested that this Court set an Order that if the warrant of eviction is vacated, the stay will remain in effect thereafter and if the state court declines to vacate the warrant of eviction, the stay shall be dissolved forthwith.

Dated: June 7, 2018

/s/ Ryan Gentile
_____
Ryan Gentile Esq.
Law Offices of Gus Michael Farinella, PC
110 Jericho Turnpike – Suite 100
Floral Park, NY 11001
Tel: 516-326-2333